## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| Michelle Tallent, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. |
| | ) | |
| v. | ) | |
| | ) | |
| Gwinnett County School District, | ) | **Jury Trial Demanded** |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

COMES NOW, Plaintiff Michelle Tallent ("Plaintiff" or "Ms. Tallent"), and files this *Complaint for Damages and Injunctive Relief* against Defendant Gwinnett County School District ("GCSD"), for violating Titles I and II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, and Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 701. In support thereof, Plaintiff offers the following:

### JURISDICTION AND VENUE

1.      This Court has original, federal-question jurisdiction over this action, pursuant to 28 U.S.C. § 1331.

2.      This Court has personal jurisdiction over Defendant. The tortious actions in question occurred, in part, in Gwinnett County, Georgia, and

Defendant resides in Gwinnett County, Georgia, which is located within this district and division.

3.      Venue is proper in this Court because Gwinnett County, Georgia, is located within this district and division and the events in question occurred, in part, therein.

**PARTIES**

4.      Ms. Tallent submits to the jurisdiction of this Court.

5.      Defendant is an agency of the Gwinnett County, Georgia, which administers all public schools in the county, including Grayson High School and Walnut Grove Elementary School.

6.      At all times relevant to this complaint, Defendant was Ms. Tallent's employer for the purposes of Title I of the ADA.

7.      Defendant is a public entity for the purposes of Title II of the ADA.

8.      Defendant is a recipient of federal financial assistance for the purposes of the Rehabilitation Act.

9.      Defendant may be served with the summons and complaint by service upon its Superintendent, Calvin Watts, at 437 Old Peachtree Road NW, Suwanee, Georgia 30024-2978.

FACTS

10.     Ms. Tallent began her employment with Defendant in 2003. Her first job title was School Nutrition Program Food Assistant.

11.     From 2003 through 2021, Ms. Tallent continued to work in Defendant's cafeterias, feeding the children of Gwinnett County with a smile on her face for nearly twenty years.

12.     Ms. Tallent suffers from a developmental disability which impairs her communication skills, including reading, speaking, writing, and language comprehension generally.

13.     Although she is not "profoundly" disabled, Ms. Tallent's disability is noticeable enough that she has endured social ostracism and been the target of slurs such as "retard" her entire life, by strangers and acquaintances alike.

14.     This kind of bullying began in her childhood, but it has followed her into her adult life and even into the workplace.

15.     For at least eight years, Defendant has been fully aware both of Ms. Tallent's disability and of her ability to perform the essential functions of her job.

16.     In 2015, her manager, one Samuel Martinez, worked closely with Ms. Tallent, despite her disability, to help her earn a promotion to Assistant Manager.

17.    However, in August 2017, Defendant transferred Ms. Tallent to another school, Grayson High School, away from Mr. Martinez, and she lost her Assistant Manager title in this transfer.

18.    Following the transfer, her new manager was less accommodating than Mr. Martinez.

19.    Throughout her employment at Grayson High School, Ms. Tallent received consistently satisfactory marks on her annual performance evaluations, in all twenty-two categories.

20.    However, despite her satisfactory performance, Ms. Tallent's manager at Grayson High School would single her out for abuse, making her work odd shifts that were not required of other employees without disabilities, denying her bereavement leave without explanation after her father's untimely death, and denying her time off for religious holidays.

21.    Her manager also regularly berated and mocked Ms. Tallent personally, and she ignored the bullying that some of Ms. Tallent's other coworkers directed at her because of her disability.

22.    The employees who did not bully Ms. Tallent quietly told her they were reluctant to be seen being nice to her for fear of drawing the manager's wrath themselves.

23.     To escape this abuse, Ms. Tallent began training with the custodial staff and requested a transfer to the custodial department on several occasions.

24.     At first, the leadership at Grayson High School ignored her requests.

25.     Finally, in October of 2021, by and through counsel, Ms. Tallent submitted a formal letter to the Grayson High School principal and Defendant's Executive Director of Internal Resolution and Compliance, explaining all of the foregoing facts, asserting Ms. Tallent's right to a workplace free of discriminatory harassment, asserting Ms. Tallent's right to reasonable accommodations, reminding Defendant of its affirmative duties under state and federal law to provide such accommodations and to protect its employees from such harassment, and again requesting that Ms. Tallent be allowed to transfer to the custodial department, as a reasonable accommodation to get Ms. Tallent away from her harasser with minimal disruption to Grayson High School's cafeteria operations.

26.     The following month, November of 2021, Defendant transferred Ms. Tallent to the custodial department at another school, Walnut Grove Elementary.

27.     Shortly after her transfer, Ms. Tallent began to experience more discriminatory treatment by her new coworkers and supervisor.

28.     For example, Ms. Tallent was assigned work she was specifically instructed required two people, for safety reasons—such as moving large tables

5

around the school campus—but the other custodial staff refused to help her, thereby preventing her from doing her job.

29.     As set forth above, this kind of ostracism was nothing new to Ms. Tallent, and so on February 15, 2022, she met with her manager and the school principal to complain about this discrimination and other mistreatment.

30.     They did not provide any help. Instead, the next day, when she came into work, she was sent to Human Resources and put on leave pending investigation.

31.     Defendant then terminated Ms. Tallent's employment in a meeting on February 17. Defendant offered her the option of resigning in lieu of termination, but she declined.

32.     Defendant terminated Ms. Tallent because of her disability, because she requested an accommodation for her disability, and/or in order to avoid having to accommodate her disability.

33.     Her official Department of Labor Separation Notice states one word, "insubordination," as the reason for her termination.

34.     Ms. Tallent was not insubordinate in any way.

35.     At the time, Defendant did not tell her what she did that was allegedly "insubordinate."

36.     Since her termination, Defendant has not responded to her many requests for an explanation regarding same.

37.     In the administrative proceedings prior to the filing of this *Complaint*, Defendant did not attempt to identify this alleged "insubordination" or explain how it was grounds for termination.

38.     Ms. Tallent's 692-page employment file, produced in full in response to a request under Georgia's Open Records Act, does not contain even one reference to this alleged "insubordination," besides the one-word statement in her Separation Notice itself.

39.     However, several of Ms. Tallent's performance evaluations over the years, including her most recent in 2021, do describe how Ms. Tallent "is cooperative, respectful and courteous," how "she is very dependable," how she "will do what she is asked to do," and how she responds well to coaching, as long as her alleged mistakes are clearly explained to her.

40.     Losing her job so abruptly and unfairly, after over twenty years of service to Gwinnett County, has caused Ms. Tallent immense emotional distress.

41.     On July 27, 2022, Ms. Tallent filed a charge of discrimination with the federal Equal Employment Opportunity Commission ("EEOC") alleging discrimination and retaliation in violation of the ADA based on the foregoing facts.

7

42.     Defendant's EEOC position statement flatly denies any knowledge of Ms. Tallent's disability or her complaints regarding discrimination.

43.     On September 22, 2023, the EEOC ended its investigation and issued Ms. Tallent a Notice of Right to Sue.

## LEGAL CLAIMS

### Count I – Disability discrimination in violation of the ADA

44.     Title I of the ADA prohibits qualified employers from discriminating against qualifying employees.

45.     Defendant has more than fifteen employees, and therefore is a "covered entity" for the purposes of Title I of the ADA. 42 U.S.C. §§ 12111(2); 12111(5).

46.     Ms. Tallent's employment history with Defendant, as set forth above, demonstrates her ability to perform the essential functions of her employment position with and without reasonable accommodation, and so she is a "qualified individual" for the purposes of Title I of the ADA. 42 U.S.C. § 12111(8).

47.     Ms. Tallent suffers from a "disability" within the meaning of the ADA, as defined at 42 U.S.C. § 12102, in that her atypical development and intellectual capacity substantially limit her in many major life activities,

including but not limited to reading, writing, thinking, speaking, and other forms of verbal and nonverbal communication.

48.     The ADA prohibits discrimination in several forms, including "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

49.     As set forth above, Defendant terminated discriminated against Ms. Tallent because of her disability in several respects, including but not limited to terminating her employment because of her disability and failing to protect her from the discriminatory abuse of her coworkers and managers.

50.     Defendant is therefore liable to Ms. Tallent for disability discrimination in violation of Title I of the ADA. Specifically, for its illegal conduct, Defendant is liable to Ms. Tallent for both prospective relief and compensatory damages including but not limited to pain and suffering, lost wages and benefits, attorneys' fees, and other costs of litigation.

**Count II – Failure to accommodate in violation of the ADA**

51.     Title I of the ADA specifically identifies, as one form of prohibited discrimination, "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who

is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A).

52.     As set forth above, Ms. Tallent requested a reasonable accommodation numerous times—specifically, she requested to be transferred out from underneath a manager who regularly mocked her because of her disability.

53.     Ms. Tallent's requested accommodation did not require Defendant to undertake significant difficulty or expense—financially, operationally, or otherwise—and so did not impose an "undue hardship" on Defendant's business operations, as that term is defined in 42 U.S.C. § 12111(10).

54.     As set forth above, Defendant completely ignored Ms. Tallent's requests for accommodation until she was able to retain counsel.

55.     Defendant is therefore liable to Ms. Tallent for disability discrimination in violation of Title I of the ADA. Specifically, for its illegal conduct, Defendant is liable to Ms. Tallent for both prospective relief and compensatory damages including but not limited to pain and suffering, lost wages and benefits, attorneys' fees, and other costs of litigation.

### Count III – Retaliation in violation of the ADA

56.     The ADA prohibits retaliation against an employee who makes a good-faith complaint of discrimination or request for disability accommodations. 42 U.S.C. § 12203.

57.     As set forth above, Defendant terminated Ms. Tallent because of her disability.

58.     As set forth above, Defendant alternatively terminated Ms. Tallent because of her good-faith complaints of discrimination.

59.     As set forth above, Defendant alternatively terminated Ms. Tallent because of her good-faith requests for disability accommodations.

60.     Defendant is therefore liable to Ms. Tallent for retaliation in violation of the ADA. Specifically, for its illegal conduct, Defendant is liable to Ms. Tallent for both prospective relief and compensatory damages including but not limited to pain and suffering, lost wages and benefits, attorneys' fees, and other costs of litigation.

### Count IV – Title II of the ADA

61.     Title II of the ADA provides that no "public entity" shall discriminate against a "qualified individual with a disability" with respect to said entity's "services, programs, or activities." 42 U.S.C. § 12132.

11

62.     In the Eleventh Circuit, Title II's protections extend to employees of public entities. *Bledsoe v. Palm Beach Cnty. Soil & Water Conservation Dist.*, 133 F.3d 816, 820 (11th Cir. 1998).

63.     Defendant, as an instrumentality of Gwinnett County, Georgia, is a "public entity" for the purposes of Title II of the ADA, as that term is defined in 42 U.S.C. § 12131(1).

64.     Employment is one of the "services, programs, or activities" Defendant provides as a public entity, as those terms are used in 42 U.S.C. § 12132.

65.     Ms. Tallent, despite her disability, is fully capable of discharging her job duties with and without reasonable accommodation, and so she is a "qualified individual with a disability" for the purposes of Title II of the ADA, as that term is defined in 42 U.S.C. § 12131(2).

66.     By terminating Ms. Tallent's employment because of her disability, because of her requests for accommodation, and/or because of her complaints of disability discrimination, Defendant has denied her equal opportunity to participate in its services as a public employer, and so Defendant is liable to Ms. Tallent for disability discrimination in violation of Title II of the ADA. Specifically, for its intentional discrimination against Ms. Tallent and its deliberate indifference to her rights under the ADA, Defendant is liable to her for

both prospective relief and compensatory damages including but not limited to pain and suffering, lost wages and benefits, attorneys' fees, and other costs of litigation.

### Count V – Rehabilitation Act

67.     The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . . ." 29 U.S.C. § 794(a). The substantive standards of liability under the Rehabilitation Act are the same as those under the ADA. *Cash v. Smith*, 231 F.3d 1301 (11th Cir. 2000).

68.     Defendant receives "Federal financial assistance," as that term is used in 29 U.S.C. § 794(a).

69.     Defendant is liable to Ms. Tallent for disability discrimination in violation of the Rehabilitation Act for all the same reasons as under Titles I and II of the ADA as set forth above. Specifically, Defendant is liable to Ms. Tallent for both prospective relief and pecuniary damages including but not limited to lost wages and benefits, attorneys' fees, and other costs of litigation.

WHEREFORE, Plaintiff prays:

a.      for a trial by jury;

b.      for judgment in her favor on the claims asserted herein;

c.      for an order declaring Defendant to be in violation of the ADA and

Rehabilitation Act;

d.      that Plaintiff be awarded her lost wages and benefits;

e.      that Plaintiff be reinstated or receive equivalent front pay and benefits.

f.      that Defendants be required to pay compensatory damages to Plaintiff, in

an amount determined by the enlightened conscience of the jury;

g.      that Plaintiff be awarded reasonable attorneys' fees and costs; and

h.      that the Court grant other legal and equitable relief as the court finds

appropriate.

Respectfully submitted this December 21, 2023.

*/s/Jake Knanishu*
Jake Knanishu
Georgia Bar No. 597103
Justin Scott
Georgia Bar No. 557463
Radford Scott, LLP
315 W. Ponce de Leon Ave., Suite 1080
Decatur, Georgia 30030
T: (678) 271-0300
F: (678) 271-0311
jscott@radfordscott.com
jknanishu@radfordscott.com

*Counsel for Plaintiff*